UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

```
-------------------------------------------------------X
                                                       :   Civil Action 06-1278 (GEB) (ES)
FORD MOTOR COMPANY, ET AL.                             :
                                                       :
          Plaintiffs/Counterclaim                      :
          Defendants,                                  :
                                                       :
                                                       :   OPINION
     v.                                                :
                                                       :   June 14, 2010
                                                       :
EDGEWOOD PROPERTIES, INC.                              :
                                                       :
                                                       :
          Defendant/Counterclaimant.                   :
-------------------------------------------------------X
```

**SALAS, UNITED STATES MAGISTRATE JUDGE:**

## I. INTRODUCTION

On June 3, 2010, this Court heard argument on Plaintiff/Counterclaim Defendant Ford Motor Company and Ford Motor Land Development Corporation's[1] Motion to Quash the November 9, 2009 subpoena *duces tecum* and *ad testificandum* issued to Todd Harrison, Esq., of Patton Boggs LLP, counsel to Ford, and request for a protective order under Fed. R. Civ. P. 26(c) prohibiting Edgewood from deposing Mr. Harrison and from obtaining documents requested in

---

[1] For ease of reference, the parties will collectively be referred to as "Ford."

the subpoena. (Docket Entry No. 289.) Ford also seeks payment of its attorneys' fees and other reasonable expenses incurred in this motion.

For the reasons set forth below, this Court grants in part and denies in part Ford's Motion to Compel. The Court holds that (1) Edgewood is not entitled to depose Mr. Harrison at this time because the information sought is available from other sources; (2) Edgewood is entitled to depose Joseph Downes, the investigator who accompanied Mr. Harrison to the December 2008 interview with David Hofer (the "2008 Interview"); (3) Ford must produce any notes taken by Mr. Downes during the 2008 Interview; (4) Ford must also produce the restaurant bill from the 2008 Interview; and (4) Ford's request for payment of fees and expenses incurred in making this motion is denied.

## II.  BACKGROUND

The factual background underlying this litigation is well known to all the parties, is set forth in various opinions of this Court and Judge Ackerman, and need not be repeated here at length. *See Ford Motor Co. v. Edgewood Properties, Inc.*, No. 06-1278, 2007 WL 4526594 (D.N.J. Dec. 18, 2007) (Ackerman, J.); 2008 WL 4559770 (D.N.J. Oct. 8, 2008) (Ackerman, J.); 2009 WL 150951 (D.N.J. Jan. 20, 2009) (Salas, J.).

As noted in previous opinions, this case arises out of the demolition of a Ford assembly plant in Edison, New Jersey, and the distribution of contaminated concrete therefrom. Ford and Edgewood entered into a contract whereby Ford agreed to provide 50,000 cubic yards of concrete to Edgewood in exchange for Edgewood hauling it off the site. The concrete turned out to be contaminated, and so began this litigation, with Ford bringing the instant action against Edgewood asserting claims under the Comprehensive Environmental Response, Compensation

2

and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq*. and Section 58:10-23, 11f (a)(2) of the New Jersey Spill Act ("Spill Act" or "Act") for contribution and indemnification for all costs as provided under the contract. Edgewood, in turn, counterclaimed against Ford, asserting breach of warranty, common law fraud, unjust enrichment, violation of the New Jersey Consumer Fraud Act, contractual indemnification and violations of the Spill Act.

Turning to the matters at hand, in December 2008, Mr. Harrison and Mr. Downes both interviewed Mr. Hofer, a former employee of Edgewood. At this time, Mr. Hofer was not represented by counsel and, to Ford's knowledge, Edgewood's counsel had yet to contact Mr. Hofer. In October and early November 2009, however, Edgewood's counsel allegedly communicated with Mr. Hofer in preparation for an upcoming deposition by Mr. Harrison. On November 9, 2009, Mr. Harrison deposed Mr. Hofer. (Ford's Memorandum of Law in Support of its Motion to Quash and for a Protective Order ("Pls' Br.") 1-2.)

During this deposition, Mr Harrison alleged that Mr. Hofer's testimony had changed significantly from the information provided to Mr. Downes and him during the 2008 Interview. After further probing the alleged inconsistency between the 2008 Interview and the deposition testimony, Edgewood's counsel objected to Mr. Harrison's line of questioning. During a break in Mr. Hofer's deposition, Edgewood's counsel served Mr. Harrison with a subpoena to testify as a fact witness and produce related documents. (Pls. Br. 2.)

The issues listed above will be discussed in turn.

### III. ANALYSIS

#### A. HARRISON DEPOSITION

"A Rule 45 subpoena served in conjunction with discovery must fall within the scope of proper discovery under Fed.R.Civ.P. 26(b)(1)." *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007). A court possesses authority to quash or modify a subpoena upon a timely motion by the party served if it falls outside the scope of permissible discovery. *See id.* "A motion to quash is similar to a motion for a protective order that discovery not be had under Rule 26(c) and is judged under similar standards." *Leibholz v. Hariri*, No. 05-5148, 2008 WL 2697336, at *2 (D.N.J. June 30, 2008). With respect to precluding an attorney's deposition, courts must therefore consider the analysis under Fed. R. Civ. P. 26(c). *See Mamman v. Chao*, No. 06-2688, 2008 WL 1995127, at *1-2 (D.N.J. May 7, 2008); *Macario v. Ratt & Whitney Canada, Inc.*, No. 90-3906, 1991 WL 94278, at *3 (E.D.Pa. May 28, 1991); *see also A&B Ingredients, Inc. v. Hartford Fire Ins. Co.*, No. 08-6264, 2010 WL 335616, at *4 (D.N.J. Jan 29, 2010) (discussing that a court may limit discovery by issuing a protective order under Fed. R. Civ. P. 26(c)). Fed. R. Civ. P. 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...."

The Federal Rules place the burden on the party seeking a protective order. *See Cipolone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). While there is "no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information," a party can succeed in precluding attorney deposition discovery under Rule 26(c)

4

"if it establishes an 'undue burden' or 'oppression' measured by: (1) the relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs; (2) the availability of the information from other sources that are less intrusive into the adversarial process; and (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony." *Johnston Dev. Group, Inc. v. Carpenters Local Union*, No. 1578, 130 F.R.D. 348, 352 (D.N.J. 1990).

The deposition of an attorney may be necessary and appropriate if the attorney may be a fact witness, as opposed to a non-party to the underlying transactions giving rise to the action. *See id.* at 352; *see also Musko v. McCandless*, No. 94-3938, 1995 WL 580275, at *1 (E.D.Pa. Sep. 29, 1995) ("While the deposition of an attorney can often be burdensome and disruptive, and is not to be entered into unadvisedly or lightly, it is nevertheless appropriate where the attorney is a fact witness.").

In this case, the Court finds that the quality of the information in Mr. Harrison's knowledge is not such that would warrant his deposition at this time. The information sought from Mr. Harrison is available from other sources, namely the investigator who attended the 2008 Interview with Mr. Hofer. Mr. Downes can either support or contradict Mr. Hofer's deposition testimony using his recollection of the December 2008 Interview without significant harm to Ford's representational rights.

### B. DOWNES DEPOSITION AND DOCUMENT REQUEST NO. 1

Mr. Downes was also present during the 1998 Interview with Mr. Hofer. In its argument supporting the motion to quash Edgewood's subpoena seeking to depose Mr. Harrison, Ford

itself asserts that "Edgewood could have sought discovery from the private investigator present for the duration of Mr. Harrison's earlier interview of Mr. Hofer." (Pls' Br. 8-9.) Although Ford also argues that "the investigator's recollection of the interview might inevitably reveal his and Mr. Harrison's mental processes" and therefore is also protected by the work product doctrine, Ford admits that information obtained from Mr. Downes regarding the 1998 Interview should be the same as that which could be obtained from Mr. Harrison. (Pls' Br. 9 n.4.)

Ford's argument that Mr. Downes may reveal information protected by attorney-client privilege and/or the work product doctrine at his deposition is unavailing. First, the discussions among Mr. Harrison, Mr. Downes, and Mr. Hofer at the 1998 Interview are not protected by the attorney-client or work product privileges. Second, to the extent that questioning Mr. Downes about the 1998 Interview would reveal information otherwise protected by the attorney-client and/or work product privileges, the Court finds that Ford has waived those privileges.

As the Supreme Court of the United States recognized, the attorney-client privilege represents the "oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Justice Rehnquist's seminal decision goes on to acknowledge that the attorney-client privilege was designed to "foster disclosure and communication between the attorney and client." *Id*. We tolerate this exception to the otherwise broad discovery policy embodied in Federal Rule of Civil Procedure 26 on the grounds that, "sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id*. The party asserting the attorney-client privilege bears the burden of proving that it applies to the

communication at issue. *Smithkline Beecham v. Apotex Corp.*, 232 F.R.D. 467, 472 (E.D. Pa. 2005) (*citing In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979)).

Fed. R. Civ. P. 26(b)(3) also states that: "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

The party asserting this work product protection bears the burden of establishing that this doctrine applies. *See Conoco, Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982). Courts in the Third Circuit generally apply a two-part test to determine whether items at issue should be protected under the work product doctrine. *See Louisiana Mun. Police Employees Retirement System*, 253 F.R.D. at 306 (internal quotations omitted); *In re Gabapentin Patent Litigation*, 214 F.R.D. 178, 183 (D.N.J. 2003). The first prong is the "reasonable anticipation" test, which "requires that the court determine at what point in time litigation could reasonably have been anticipated." *In re Gabapentin Patent Litigation*, 214 F.R.D. at 183 (internal quotations omitted). The second prong is whether the documents were prepared "primarily for the purpose of litigation." *Louisiana Mun. Police Employees Retirement System*, 253 F.R.D. at 306 (quoting *Paris v. R.P. Scherer Corp.*, No. XYZ, 2006 WL 1982876, at *2 (D.N.J. July 13, 2006).

7

"Courts have found an implied waiver of the attorney-client and/or attorney work product privilege where a client affirmatively places otherwise privileged information *at issue* in the case." *In re Human Tissue Products Liability Litigation*, 255 F.R.D. 151, 158 (D.N.J. 2008) (emphasis added). This "at issue" doctrine applies if a party asserts a claim or defense that will be proven by use of privileged materials. *U.S. v. Sensient Colors, Inc.*, No. XYZ, 2009 WL 2905474, at *7 (D.N.J. Sep. 9, 2009); Pittston Co. v. Allianz Ins. Co., 143 F.R.D. 66, 71 (D.N.J. 1992); <u>North River Ins. v. Philadelphia Reinsurance Corp., 797 F.Supp. 363, 370 (D.N.J.1992)</u>.

Courts consider several factors to determine whether an "at issue" waiver has occurred, including whether: "(1) the assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *In re Human Tissue Products Liability Litigation*, 255 F.R.D. at 159 (internal quotations omitted).

In a case factually similar to the one at hand, a district court recognized that a party "waives work product protection when he attempts to make 'testimonial use of work product materials,' such as when he 'sought to adduce the testimony of [his attorney's] investigator and contrast [the investigator's] recollection of … contested statements with that of the prosecution's witnesses." *See O'Connor v. Boeing North American, Inc.*, 216 F.R.D. 640 (C.D.Cal. 2003) (citing *United States v. Nobles*, 422 U.S. 225, 249-40 & n.14 (1975)). The court found that using the information obtained by the investigator in interviews to formulate questions did not make "testimonial use" of the information and therefore did not constitute a waiver of the work product privilege. The O'Connor Court found in that case that counsel's questions were not evidence.

Here, however, Ford's attorney did make "testimonial use" of the information. Instead of merely using the information from the 1998 Interview to formulate questions, as in *O'Connor*, Mr. Harrison sought to use his recollection and the recollection and/or notes of Mr. Downes to contradict the deposition testimony of Mr. Hofer – an affirmative act that made protected information relevant to the case. Edgewood therefore has a right to the information sought from Mr. Downes.

For the foregoing reasons, Ford must also product any notes taken by Mr. Downes during the 1998 Interview.

### C. THE RESTAURANT BILL

The Federal Rules of Civil Procedure permit broad and liberal discovery. *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999). Specifically, the Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). A party is entitled to discovery of any information sought if it appears "reasonably calculated to lead to the discovery of admissible evidence." *Id*. The Court may limit the frequency or extent of discovery if it is (i) unreasonably cumulative or duplicative; (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action" or (iii) "the burden or expense of the proposed discovery outweighs its likely benefit..." Fed. R. Civ. P. 26(b)(2)(c).

Defendant Edgewood Properties has sustained its burden to demonstrate that the restaurant bill for the 2008 Interview of Ford's counsel and investigator with Mr. Hofer is relevant to the Defendant's claims. Although Plaintiff Ford argues that Edgewood's request in the subpoena to Harrison for "[a]ny and all documents reflecting or relating in any way to the bill

9

or any receipts from the restaurant at which you met with David Hofer on or about December 11, 2008" is not relevant, Ford's repeated attempts to contradict Mr. Hofer's testimony as inconsistent with the 2008 Interview at the deposition have called the veracity of Mr. Hofer's deposition testimony into question. Particularly since no transcript of the December 2008 meeting is available, Edgewood has a right to inquire into the circumstances of the meeting.

### D. FORD'S EXPENSES

Finally, Ford has cited no law supporting its request for reasonable expenses, including attorney's fees and has failed to adequately articulate an argument for expenses and/or attorneys' fees. Therefore, this request is denied.

### IV. CONCLUSION

For the foregoing reasons, the Motion to Quash and for a protective order is granted in part, and denied in part. A separate order shall issue.