**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**NOT FOR PUBLICATION**

---------------------------------------------------X
:         Civil Action 06-1278 (WJM) (ES)
FORD MOTOR COMPANY, ET AL.    :
:
      Plaintiffs/Counterclaim   :
      Defendants,   :
:
:         **OPINION**
   v.   :
:         **February 15, 2011**
:
EDGEWOOD PROPERTIES, INC.   :
:
:
      Defendant/Counterclaimant.   :
---------------------------------------------------X

**SALAS, UNITED STATES MAGISTRATE JUDGE:**

Pending before the Court is Plaintiff-Counterclaim Defendant Ford Motor Company's ("Ford") November 8, 2010 motion for a protective order to prevent Defendant-Counterclaimant Edgewood Properties, Inc. ("Edgewood") from deposing three former or current Ford executives, William C. Ford, Jr., Roman Krygier and Donat Leclair. (Docket Entry No. 381, the "Motion"). Having considered the parties' positions set forth in both its papers and during oral argument on January 3, 2011, the Court hereby GRANTS Ford's Motion in part, and DENIES in part.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of the demolition of a Ford assembly plant in Edison, New Jersey (the "Edison Plant"), and the distribution of contaminated concrete therefrom. Ford and Edgewood entered into a contract whereby Ford agreed to provide 50,000 cubic yards of concrete to Edgewood

1

in exchange for Edgewood hauling it off the site.  Thereafter, Edgewood brought the concrete to seven properties it was developing (the "Seven Properties").  (Docket Entry No. 381-1, Ford's Memorandum of Law in Support of its Motion for a Protective Order to Prohibit the Depositions of William C. Ford, Jr., Roman Krygier, and Donat Leclair dated November 8, 2010 ("Ford's Moving Br.") at 1-2).  The parties later determined that the concrete was contaminated. As such, Ford brought claims against Edgewood under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq*. and Section 58:10-23, 11f(a)(2) of the New Jersey Spill Act ("Spill Act" or "Act") for contribution and indemnification for all costs as provided under the contract.  Edgewood, in turn, has asserted cross-claims, counter-claims and a third-party complaint against Ford and other parties, which include claims for breach of contract, contribution, negligent misrepresentation, and civil conspiracy.

On October 20, 2010 and October 26, 2010, Edgewood served Ford with notices of deposition of: (1) Mr. William C. Ford, Jr., Ford's Executive Chairman and Chairman of Ford's Board of Directors (Docket Entry No. 381-2, Exh. 1, Affidavit of William Clay Ford, Jr., dated November 4, 2010 ("Mr. Ford's Aff.") at ¶ 2);[1]  (2) Mr. Roman Krygier, Ford's former Group Vice President of Global Manufacturing from 2001 until December 2005 (*Id*. at Exh. 3, Declaration of Roman J. Krygier dated November 2, 2010 (the "Krygier Decl.") at ¶ 3); and (3) Mr. Donat Leclair, Ford's former Chief Financial Officer ("CFO") from August 2003 to November 2008 (*Id*. at Exh. 2, Declaration of Donat R. Leclair dated November 2, 2010 (the "Leclair Decl.") at ¶ 3).  Edgewood seeks to depose Mr. Ford, Mr. Krygier and Mr. Leclair (the "Ford Executives") about the sale, decommissioning and remediation of the Edison Plant. (*See* Docket Entry No. 386, Memorandum

---

[1] From 2001-2006, Mr. Ford served as Ford's President and CEO.

2

of Law in Opposition to Ford Motor Company's and Ford Motor Company Land Development Corporation's Motion for a Protective Order to Prohibit the Depositions of William Clay Ford, Jr., Roman Krygier and Donat Leclair dated November 22, 2010 ( "Edgewood's Br.")). On November 8, 2010, Ford filed the instant Motion for a protective order to prevent Edgewood from deposing Mr. Ford, Mr. Krygier, and Mr. Leclair.

## II.   RELEVANT LAW

Federal Rule of Civil Procedure 26(c) permits a court to limit the scope of discovery, including the scope of depositions, by entering a protective order. A court may enter a protective order upon a showing of good cause in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . [an order] (A) forbidding the [deposition]; (B) specifying terms . . . for the disclosure or discovery; . . .; [and] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *Id.* Indeed, courts have significant discretion when resolving discovery disputes. *Reif v. CNA*, 248 F.R.D. 448, 451 (E.D. Pa. 2008).

While the Third Circuit has not set forth an analytical framework for determining whether a court should permit the deposition of a high-ranking corporate executive, various courts throughout this circuit have adopted rules which this Court finds persuasive. *See e.g. Piontek v. I.C. Sys.*, No. 08-1207, 2008 U.S. Dist. LEXIS 84963, at *1 (E.D. Pa. Oct. 22, 2008); *Roman v. Cumberland Insur. Group,* No. 07-1201, 2007 U.S. Dist. LEXIS 96775, at *2 (E.D. Pa. Oct. 26, 2007)*; Reif,* 248 F.R.D. at 451; *accord Salter v. The Upjohn Co.*, 593 F.3d 649, 650-51 (5th Cir. 1979). Courts in this circuit consider two factors when assessing whether the deposition of a high-ranking corporate officer, executive or manager is appropriate: (1) whether the executive or top-level employee has personal or unique knowledge on relevant subject matters; and (2) whether the information sought can "be obtained from lower[-]level employees or through less burdensome means, such as interrogatories."

*Reif*, 248 F.R.D. at 451 (denying plaintiff's request to depose the CEO, because the CEO lacked unique knowledge as to why the plaintiff was terminated).

For example, in *Otsuka Pharmaceutical Company v. Apotex Corporation*, the court denied a motion to prohibit the deposition of a CEO in a patent case partly because the CEO was directly involved in matters that were at issue and the CEO had discoverable information that was not cumulative of other witnesses. No. 07-1000, 2008 WL 4424812, at *3, *5 (D.N.J. Sept. 25, 2008). In so ruling, the court reasoned "that there is not a protective blanket that prohibits discovery from highly-placed executives," particularly when the executive has unique personal knowledge of facts that may not be ascertainable from other lower-level employees. *Id.* at *5.

## III.  ANALYSIS

Here, Ford argues that the Court should grant the Motion because the Ford Executives do not possess unique, personal knowledge of the facts at issue, and Edgewood's attempt to depose the Ford Executives is burdensome and harassing.[2] (Ford's Moving Br. at 2, 8). In support, Mr. Ford submitted an affidavit indicating that he was not involved in the decision to sell the Edison Plant and that he does not have personal knowledge of the facts related to the decommissioning and remediation of the Edison Plant. (Mr. Ford's Aff. at ¶¶ 5-6). Similarly, both Mr. Krygier and Mr. Leclair submitted declarations stating that they were not involved in the decision to sell the Edison Plant and they do not have personal knowledge about the decommissioning and remediation of the Edison Plant. (Krygier Decl. at ¶¶ 6-7; Leclair Decl. at ¶¶ 6-7). Ford contends that there are other Ford executives with superior knowledge of the facts, such as Mr. Sean McCourt, Ford Land's

---

[2] Ford also seeks reimbursement of its expenses and attorney's fees associated with the Motion for a Protective Order. (Ford's Moving Br. At 1). Although the Court has authority to grant this request pursuant to Fed. R. Civ. P. 37(a)(5), Ford has not provided the Court with any justification for such an award. As such, the request is denied.

former Chairman and President.[3] (Ford's Reply Br. at 2). In fact, Mr. Ford states that his eventual approval of the sale of the Edison Plant was based on communications with Mr. McCourt, and that "other employees had responsibility for determining the terms of the sale of the Edison Plant." (*See* Mr. Ford's Aff. at ¶ 5). Moreover, all of the Ford Executives state the only information that they received regarding the decommissioning and remediation of the Edison Plant were provided to them by Mr. McCourt, who purportedly had "direct involvement" in these matters. (Ford's Reply Br. at 2; Mr. Ford's Aff. at ¶ 6; Leclair Decl. at ¶ 7; Krygier Decl. at ¶ 7). Ford also contends that Jay Gardner, a former Ford Land employee, has superior knowledge about the sale of the Edison Plant, as evidenced by the testimony of Mr. McCourt.[4] (Ford's Reply Br. at 9-10). Finally, Ford also argues that Edgewood's document requests contained in the deposition notices seek irrelevant and highly personal information such as the Ford Executives' "personal calendars" and "travel history." (Ford's Moving Br. at 2).

Edgewood argues that Ford's Motion should be denied because documents that were produced during discovery reveal that each of the Ford Executives possess personal knowledge about relevant facts at issue. (Edgewood's Br. at 1-3). Specifically, Edgewood points to an internal memorandum dated June 14, 2004 (the "June 14 Memorandum") addressed to Mr. Ford and authored by Mr. McCourt, wherein Mr. McCourt sought Mr. Ford's approval to sell the Edison Plant and to obtain supplemental funding for the decommissioning of the Edison Plant. (*Id.* at 1-3, 7-13). As such, Edgewood explains that it seeks to depose the Ford Executives about the June 14

---

[3] On November 22, 2010, Edgewood deposed Mr. McCourt. (Ford's Reply Br. at 2).

[4] On November 16, 2010, Edgewood noticed the deposition of Mr. Gardner, but subsequently cancelled the deposition. (Ford's Reply Br. at 2).

Memorandum and to inquire about their knowledge relating to the sale of the Edison Plant, the decommissioning budget, and their subsequent actions when the circumstances relating to the decommissioning and remediation of the Edison Plant changed. (Docket Entry No. 386-1, Certification of Alan Wasserman, Esq., In Support of Edgewood's Memorandum of Law in Opposition to Ford's Motion for a Protective Order (the "Wasserman Cert."), ¶ 39). Edgewood further argues that it should be permitted to depose the Ford Executives because other deponents with purportedly superior knowledge could not answer specific questions related to the sale and decommissioning of the Edison Plant. (*Id.* at 12-13, 21-24). In sum, Edgewood argues that the Court should deny Ford's Motion because Ford can not sustain its burden for obtaining its requested relief. As such, the Court will address each of the Ford Executives separately to determine whether Mr. Ford, Mr. Krygier, or Mr. Leclair possess personal or unique knowledge, and whether the information sought can be gleaned from deposing other lower-level employees or some other less burdensome discovery tool.

      **i.**    **Roman Krygier**

Mr. Krygier stated that he provided a concurring signature on funding requests and requests for the disposal of corporate assets and an "official Ford signature" on various internal documents that were prepared by others. (Declaration of Roman J. Krygier (the "Krygier Decl."), dated November 2, 2010, ¶ 3-4). Krygier also stated that he had "no direct involvement" in Ford's decision to sell the Edison Plant, the subsequent negotiations that led to its eventual sale, or Ford's budget for the decommissioning and remediation of the Edison Plant. (*Id*. at 6). Instead, Krygier stated that he only received information from periodic meetings and through written or oral communications between himself and Sean McCourt, the Vice President of Ford Land. (*Id.* at ¶ 6). As such, Krygier contends that he does not have unique or superior knowledge. (*Id.* ¶ 7).

While it is true that Mr. McCourt drafted the June 14 Memorandum and Mr. Krygier simply provided a concurring signature, Mr. Krygier's knowledge and involvement did not end there. For example, on June 22, 2004, Mr. McCourt sent Mr. Krygier an email "as a follow-up" to their discussion earlier that day. (Docket Entry No. 386-1, Exh. S, the "June 22 Email"). In the June 22 Email, Mr. McCourt provides Mr. Krygier with information related to the excavation and demolition of the Edison Plant, and tells him that he will "continue to keep [Mr. Krygier] informed." (*Id.*). Moreover, in an email dated January 3, 2005, Mr. Krygier provided Mr. McCourt with direction on how to handle the "environmental issues" surrounding the remediation of the Edison Plant. (*Id.* at Exh. U). Next, a memo titled "Krygier Meeting - January 11, 2005," contains a section that specifically discusses various issues surrounding the Edison Plant. (*Id.* at Exh. V). Mr. Krygier also provided his notarized signature as part of Ford's "Self-Guarantee Application" that was submitted to the New Jersey Department of Environmental Affairs in connection with Ford's sale, decommissioning and remediation of the Edison Plant. (*Id*. at Exh. T). Thus, the Court finds that Mr. Krygier has superior and unique knowledge. *See Otsuka*, No. 07-1000, 2008 WL 4424812 at *3.

Furthermore, not only does Mr. Krygier have personal knowledge of the facts surrounding the sale, decommissioning and remediation of the Edison Plant, Edgewood has demonstrated how the discovery cannot be obtained through other, lower-level executives. Indeed, Edgewood has already conducted the depositions of various Ford employees who testified that they either could not remember the circumstances surrounding the sale, remediation and decommissioning of the Edison Plant, or were not involved in the decision-making process. Accordingly, Ford's motion for a protective order to prevent the deposition of Mr. Krygier is DENIED.

Next, the Court will address Ford's objection to Edgewood's request for Mr. Kygier's "personal calendar and any documents referring or relating to [his] travel history between June 1, 2004 and July 31, 2006." (Ford's Br. at 2, n. 3). Although the parties have not addressed the issue, the Federal Rules provide that this Court may, *sua sponte*, limit the extent of discovery if the

7

information sought is unreasonably cumulative or can be obtained from some other source that is more convenient, less burdensome or less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Accordingly, the Court shall not require Mr. Krygier to comply with this broad request, and will instead require Mr. Krygier to produce a list which will summarize the dates in which Mr. Krygier traveled to the Edison Site from June 1, 2001 through July 31, 2006.

### ii.   Mr. Ford and Mr. Leclair

In evaluating whether to grant a protective order with respect to Mr. Ford and Mr. Leclair, the Court finds that Ford has met its burden. The Court has undertaken a thorough evaluation of the parties' positions and finds that the record is devoid of any evidence that would suggest that either Mr. Ford or Mr. Leclair possess personal, unique or superior knowledge about the sale, decommissioning and remediation of the Edison Plant. Although Mr. Ford and Mr. Leclair's signatures are found on the June 14 Memorandum, the Court is not persuaded that their signature alone qualifies as personal or unique knowledge. Moreover, while it may be true that lower-level executives were required to seek the approval of Mr. Ford and Mr. Leclair prior to a proposed sale of corporate assets, or to obtain increased funding for corporate projects, the Court finds that such approval does not rise to the level of superior knowledge. Instead, the facts surrounding the sale, decommissioning and remediation of the Edison Plant are more appropriately gleaned from other lower-level executives, or through answers to interrogatories. *See Reif*, 248 F.R.D. at 454. Accordingly, Ford's motion for a protective order with respect to Mr. Ford and Mr. Leclair is GRANTED.

### III.   CONCLUSION

For the reasons stated above, the Court hereby GRANTS Ford's Motion in part, and DENIES in part.

s/ Esther Salas<br>
**HONORABLE ESTHER SALAS,**<br>
**United States Magistrate Judge**