<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **FORD MOTOR COMPANY, ET AL.,** | Civ. No. 06-1278 |
| **Plaintiffs/Counterclaim Defendants,** | OPINION |
| | HON. WILLIAM J. MARTINI |
| v. | |
| **EDGEWOOD PROPERTIES, INC.,** | |
| **Defendant/Counterclaimant.** | |

<u>**WILLIAM J. MARTINI, U.S.D.J.:**</u>

This matter comes before the Court on Defendant-Counterclaimant Edgewood Properties, Inc.'s ("Edgewood") appeal (Docket Entry No. 450) of Magistrate Judge Salas's February 15, 2011 Order (Docket Entry No. 440), granting in part and denying in part Plaintiff-Counterclaim Defendant Ford Motor Company's ("Ford") motion for a protective order to prevent the depositions of William C. Ford, Jr., Roman Krygier, and Donat Leclair (Docket Entry No. 381). There was no oral argument. Fed. R. Civ. P. 78. For the reasons that follow, Plaintiffs' appeal is **DENIED**, and Judge Salas's Order granting in part and denying in part Plaintiff-Counterclaim Defendant's motion for a protective order is **AFFIRMED**.

I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the distribution of contaminated concrete from the demolition of a Ford Motor Company ("Ford") assembly plant in Edison, New Jersey (the "Edison Plaint") in 2004. Ford contracted with MIG/Alberici, LLC ("MIG/Alberici") to conduct the demolition and properly dispose of the concrete. Ford then entered into an agreement with Edgewood Properties, Inc. ("Edgewood"), whereby Ford agreed to provide 50,000 cubic yards of concrete to Edgewood in exchange for Edgewood hauling it off the site. Edgewood then used the concrete as backfill on seven commercial property sites that they were developing (the "Seven Properties"). The parties later determined that the concrete was contaminated. As such, Ford brought claims against Edgewood under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 et seq. ("CERCLA"), and Section 58:10-23, 11f (a)(2) of the New Jersey Spill Act for contribution and indemnification for all costs as provided under the contract. Edgewood, in turn, asserted cross-claims, counterclaims and a third-party complaint against Ford and other involved parties, which include claims for breach of contract, contribution, negligent misrepresentation, and civil conspiracy.

The instant dispute arises out of Edgewood's October 20, 2010 and October 26, 2010 notices of depositions of: (1) Mr. William C. Ford, Jr., Ford's Executive Chairman and Chairman of Ford's Board of Directors; (2) Mr. Roman Krygier, Ford's former Group Vice President of Global Manufacturing from 2001 until 2005; and (3) Mr. Donat Leclair,

Ford's former Chief Financial Officer ("CFO") from August 2003 to November 2008. (Judge Salas's February 15, 2011 Opinion, hereinafter "Op.," at 2.) Edgewood seeks to depose Mr. Ford, Mr. Krygier and Mr. Leclair (the "Ford Executives") about the sale, decommissioning and remediation of the Edison Plant. (Op. at 2.) In response, on November 22, 2010, Ford filed a motion for a protective order (Docket Entry No. 381) to prevent Edgewood from deposing the Ford Executives. Judge Salas held on February 15, 2011, that Mr. Ford and Mr. Leclair do not have any personal, unique, or superior knowledge about the sale, decommissioning and remediation of the Edison Plant, and granted Ford's request for protective orders as to them. As to Mr. Krygier, however, Judge Salas found that he does have personal and superior knowledge of such facts, and denied Ford's motion as to him.[1]

## III.  DISCUSSION

Federal Rule of Civil Procedure 26(c) permits a court to limit the scope of discovery, including the scope of depositions, by entering a protective order. A court may enter a protective order upon a showing of good cause in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . [an order] (A) forbidding the [deposition]; (B) specifying terms . . . for the

---

[1] As to Mr. Krygier, while Judge Salas denied Ford's motion for a protective order, she did limit Edgewood's request for Mr. Krygier's "personal calendar and any documents referring or relating to [his] travel history between June 1, 2004 and July 31, 2006." Judge Salas instead required that Mr. Krygier "produce a list which will summarize the dates in which Mr. Krygier traveled to the Edison Site from June 1, 2001 through July 31, 2006." (Op. at 8.)

disclosure or discovery; ... [and] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c).  Ford requested a protective order here because the Ford Executives do not possess unique, personal knowledge of the facts at issue, and Edgewood's attempt to depose the Ford Executives is burdensome and harassing.  (Op. at 4.)  Judge Salas agreed as to Mr. Ford and Mr. Leclair, but not as to Mr. Krygier, and held that protective orders were appropriate for Mr. Ford and Mr. Leclair only.  On appeal, Edgewood argues that (1) Judge Salas misapplied the requirements for a party seeking a protective order; (2) the evidence submitted by Ford is insufficient to support a request for a protective order; and (3) depositions of the Ford Executives are necessary in light of other witnesses' lack of knowledge.

    **A.**    **Standard of Review**

A district court may reverse a Magistrate Judge's order if it finds the ruling to be clearly erroneous or contrary to law.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  The district court is bound by the clearly erroneous rule as to findings of fact, while the phrase "contrary to law" indicates plenary review as to matters of law.  *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992).  A finding is considered "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364,

395 (1948). A decision is considered contrary to law if the magistrate judge has "misinterpreted or misapplied applicable law." *Doe v. Hartford Life Acc. Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006).

### B. Applicable Legal Standard for Granting a Protective Order

Edgewood argues that Judge Salas erroneously applied a heightened legal standard to Edgewood's subpoenas in granting Ford's motion for a protective order as to Mr. Ford and Mr. Leclair. (Edgewood's Ap. Br. at 17.) Specifically, Edgewood claims that Judge Salas erroneously relied on Ford's characterization of the depositions as "apex" depositions that were unnecessary since the Ford Executives did not have "superior knowledge," and on Ford's implication that Edgewood had a burden to show that the information sought cannot be obtained from another source. (Ap. Br. at 16-17.) Ford, however, argues that Judge Salas applied the correct legal standard in finding that the evidence presented by Ford justified the issuance of a protective order for Mr. Ford and Mr. Leclair, because Judge Salas's decision was premised on a finding that Mr. Ford and Mr. Leclair lack personal and unique knowledge of the facts at issue in this litigation. The Court agrees.

Edgewood claims that Judge Salas erroneously applied a requirement that the Ford Executives need to possess "superior knowledge" of relevant facts in order to be deposed. Edgewood further argues that Judge Salas put the burden on Edgewood to show such superior knowledge. However, looking to Judge Salas's Opinion, neither was required as

5

a basis of her decision. Judge Salas properly recognized that "[c]ourts in this circuit consider two factors when assessing whether the deposition of a high-ranking corporate officer, executive or manager is appropriate: (1) whether the executive or top-level employee has personal or unique knowledge on relevant subject matters; and (2) whether the information sought can 'be obtained from lower[-]level employees or through less burdensome means, such as interrogatories.'" (Op. at 3 (quoting *Reif v. CNA*, 248 F.R.D. 448, 451(E.D. Pa. 2008).) Judge Salas then looked to the evidence on the record and found that based on the evidence, Mr. Ford and Mr. Leclair did not "possess personal, unique *or* superior knowledge about the sale, decommissioning and remediation of the Edison Plant." (Op. at 8 (emphasis added).) Furthermore, though Edgewood points to Ford's request that the burden be on Edgewood to show that the Ford Executives have unique or superior information, Judge Salas clearly states that "Ford has met its burden" in showing that a protective order with respect to Mr. Ford and Mr. Leclair is appropriate. (Op. at 8.) Finally, Judge Salas's ruling relied in part on her finding that Mr. Ford and Mr. Leclair do not have personal or unique knowledge about relevant facts at issue, whereas the courts in the cases cited by Edgewood all found that the executives in question did have personal or unique knowledge. *See Otsuka Pharm. Co. v. Apotex Corp.*, Civ. No. 07-1000, 2008 U.S. Dist. LEXIS 73515, at *16 (D.N.J. Sept. 12, 2008) (allowing deposition of witness due to "unique knowledge"); *Johnson v. Jung*, 242 F.R.D. 481, 485 (N.D. Ill. 2007) (denying protective order where evidence suggested

"knowledge of the incidents forming the basis of plaintiff's claim," as well as "personal involvement in the decision-making process"); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) (court points to evidence of "personal knowledge of and involvement in certain relevant matters" in denying protective order); *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 104 (S.D.N.Y. 2001) (protective order denied where the court found executive had "*some* unique knowledge" that was relevant). As such, the Court finds that Judge Salas properly applied the legal standard regarding whether a protective order should be granted.

### C. Sufficiency of Ford's Evidence

Additionally, Edgewood argues that even if Judge Salas applied the correct standard and burden, Ford's proffered evidence was insufficient to support its request for a protective order. (Ap. Br. at 22.) Specifically, Edgewood contends that an internal memorandum dated June 14, 2004 (the "June 14 Memorandum"), seeking Mr. Ford's approval to sell and decommission the Edison Plant, shows that Mr. Ford and Mr. Leclair had personal and unique knowledge.

The Court is satisfied that Judge Salas properly evaluated the sufficiency of Ford's evidence. Judge Salas recognized that Mr. Ford and Mr. Leclair's signatures were on the June 14 Memorandum, but was "not persuaded that their signature alone qualifies as personal or unique knowledge." (Op. at 8.) Additionally, Judge Salas found that the

mere need for lower-level executives to seek approval from Mr. Ford and Mr. Leclair for various decisions did not overcome Mr. Ford's affidavit and Mr. Leclair's declaration supporting Ford's contention that they do not have personal knowledge of any relevant facts. (Op. at 4, 8.) Judge Salas carefully evaluated the evidence presented by Ford, specifically the affidavit and declaration asserting no personal knowledge of relevant facts, and weighed it against Edgewood's evidence that Mr. Ford and Mr. Leclair did have personal and unique knowledge of relevant facts. Notably, the same analysis of the evidence came out the other way for Mr. Krieger, as Judge Salas found that his involvement went beyond the June 14 Memorandum and showed he had unique knowledge of relevant facts. (Op. at 7.) While Edgewood may disagree with Judge Salas's findings as to Mr. Ford and Mr. Leclair, Edgewood has not shown that these findings were clearly erroneous.

### D. Relevancy of Other Witnesses' Lack of Knowledge

Once Judge Salas determined Mr. Ford and Mr. Leclair had no personal or unique knowledge as to any relevant facts, she further determined that the information Edgewood is seeking, namely "facts surrounding the sale, decommissioning and remediation of the Edison Plant," is "more appropriately gleaned from other lower-level executives, or through answers to interrogatories." (Op. at 8.) Edgewood contends that it was unable to gain the information sought when other, lower-level executives were deposed. Ford, however, argues that Edgewood's depositions of Sean McCourt (a Group Vice President

8

of Manufacturing for Ford), Jay Garner (former Vice President of Real Estate at Ford Land), and Roman Krygier (former Group Vice President) provided Edgewood with ample opportunity to glean information surrounding the sale of the Edison Plant.

The Court agrees with Judge Salas and Ford that the depositions of Mr. McCourt, Mr. Garner, and Mr. Krygier are sufficient in light of Judge Salas's finding that Mr. Ford and Mr. Leclair lack personal knowledge of the facts surrounding the sale, decommissioning and remediation of the Edison Plant. Edgewood focuses on Mr. Ford's position as the only executive with approval authority regarding the sale of the Edison Plant, and claims that Mr. Ford himself must be deposed in order to learn why Mr. Ford approved the sale, what was relied on in making the decision, and who Mr. Ford spoke to regarding this decision. (Edgewood's Reply Br. at 1.) However, as Judge Salas relies on in denying the motion for a protective order as to Mr. Krygier, the relevant information at issue here is the "various issues surrounding the Edison Plant," not Mr. Ford's state of mind when the approval was made. (Op. at 6-7.) Specifically, in denying the protective order as to Mr. Krygier, Judge Salas relies on evidence that Mr. Krygier was involved in discussions regarding the "environmental issues" with the Edison Plant and "information related to the excavation and demolition of the Edison Plant." (Op. at 7.) Mr. Ford and Mr. Leclair have already stated that they had no personal knowledge as to the decommissioning, cleanup or sale of the Edison Plant site. (Mr. Ford's Affidavit, Docket Entry No. 381-2, Ex. 1 ¶¶ 5-6; Mr. Leclair's Declaration, Docket Entry No. 381-2, Ex. 2

9

¶¶ 6-7.)  The relevant facts here relate to the environmental issues surrounding the sale and decommissioning of the Edison Plant, not Mr. Ford's personal reasons for approving the sale.  Furthermore, Mr. Ford essentially explains his reasoning in his affidavit:

> As President and CEO, my role with respect to this transaction was to provide final review and approval of the appropriation request and divestiture proposal....Other than this formal approval process, I was not involved in the decision to sell the Edison Plant to Hartz Mountain, Inc., or in the negotiations that led to the eventual sale of the Edison Plant.  Morever, my approval of the sale of the Edison Plant would have been based on the information I received in the June 2004 letter from Sean McCourt to me, and other similar communications.

(Mr. Ford's Aff. ¶ 5.)  Though Edgewood contends otherwise, Judge Salas made a proper determination that the relevant information was better sought from lower-level executives such as Mr. McCourt, and Edgewood has failed to show that this determination was clearly erroneous.

## IV. CONCLUSION

For the reasons stated above, Defendant-Counterclaimant Edgewood's appeal is **DENIED**, and Judge Salas's Order granting in part and denying in part Plaintiff-Counterclaim Defendant's motion for a protective order is **AFFIRMED**.  An appropriate Order accompanies this Opinion.

      s/ William J. Martini  
      **WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 23, 2011**