<u>**UNITED STATES DISTRICT COURT**</u>
<u>**DISTRICT OF NEW JERSEY**</u>

<u>**NOT FOR PUBLICATION**</u>

```
-----------------------------------------------------X
                                               :
FORD MOTOR COMPANY, ET AL.                     :
                                               :
            Plaintiffs/Counterclaim-           :
            Defendants,                         :
                                               :
      v.                                        :
                                               :
EDGEWOOD PROPERTIES, INC                        :
.                                               :
                                               :    Civil Action Nos. 06-1278 & 11-448
                                               :          <u>**OPINION**</u>
            Defendant/Counterclaimant.  :
-----------------------------------------------------X
                                               :
JSM AT TINGLEY, ET AL.                          :
                                               :
            Plaintiffs,                         :
                                               :
      v.                                        :
                                               :
FORD MOTOR CO., et al.                          :
                                               :
            Defendants.                         :
                                               :
-----------------------------------------------------X
```

<u>**SALAS, DISTRICT JUDGE**</u>

## I.  INTRODUCTION

Pending before the Court in both *Ford Motor Company, et al. v. Edgewood Properties, Inc.,*

*et al*, Civil Action No. 06-1278 (the "*Ford* Action"), and *JSM at Tingley, et al v. Ford Motor*

*Company*, *et al.*, Civil Action No. 11-448 (the "*JSM* Action") is Edgewood Properties, Inc.

1

("Edgewood") and WWM Properties, LLC's ("WWM") motion to disqualify the law firm of LeClair

Ryan as counsel for Ford Motor Company and Ford Motor Land Development Corporation

(collectively "Ford"). (Docket Entry No. 504 (06-1278), Docket Entry No. 54 (11-448), Motion on

Behalf of Edgewood Properties, Inc. and WWM Properties, LLC in Support of Motion to Disqualify

LeClair Ryan from Representing Ford Motor Company and Ford Motor Land Development

Corporation in the Within Matter (the "Motion")).[1]  The Court has fully reviewed the parties'

submissions and on July 20, 2011, conducted oral argument.  For the reasons set forth below, the

Court hereby GRANTS the Motion.[2]

## II. BACKGROUND

A.     Factual Background

The *Ford* Action arises out of the demolition of a Ford assembly plant in Edison, New Jersey

(the "Edison Plant"), and the distribution of contaminated concrete therefrom.  Ford and Edgewood

entered into a contract whereby Ford agreed to provide 50,000 cubic yards of concrete to Edgewood

in exchange for Edgewood's hauling it off the site.  Thereafter, Edgewood brought the concrete to

seven properties it was developing (the "Seven Properties").[3]  (*See* Docket Entry No. 381-1, Ford's

Memorandum of Law in Support of Motion for a Protective Order to Prohibit the Depositions of

William C. Ford, Jr., Roman Krygier, and Donat Leclair, ("Ford's Moving Br.") at 1-2).  The parties

---

[1]  Because the parties filed the same materials in support of and in opposition to the Motion in both the *Ford* and *JSM* Actions, this opinion will cite only to the papers in the *Ford* Action, except where otherwise noted.

[2]  The parties' briefs include: Docket Entry No. 504-1, "Edgewood's Moving Br."; Docket Entry No. 509, "Ford's Opp. Br."; and Docket Entry No. 511, "Edgewood's Reply Br."

[3]  The following entities own the Seven Properties and are the Plaintiffs in the *JSM* Action: (1) JSM at Tingley, LLC, (2) JSM at Applegarth, LLC, (3) JSM at Brick, LLC, (4) JSM at Route 70, LLC, (5) JSM at Martin Boulevard, LLC, (6) WWM Properties, LLC, (7) Fulton Square Urban Renewal, LLC, and (8) Columbia Group at Hamilton, LLC.

later determined that the concrete was contaminated. As such, Ford brought claims against Edgewood under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9601 *et seq.* and Section 58:10-23, 11f (a)(2) of the New Jersey Spill Act ("Spill Act") for contribution and indemnification for all costs as provided under the contract.  Edgewood asserted cross-claims, counter-claims, and a third-party complaint against Ford and other parties, which included claims for breach of contract, contribution, negligent misrepresentation, and civil conspiracy.

On January 25, 2011, the owners of the Seven Properties, including WWM, filed the *JSM* Action for damages in connection with their receipt of contaminated recycled concrete aggregate ("RCA") against Ford, Ford Motor Land Development Corp., MIG/Alberici, LLC, Alberici Constructors, Inc., EQ Northeast, Inc., Golder Associates, Inc., and Arcadis U.S., Inc.  In the *JSM* Action, the owners of the Seven Properties allege breach of contract, unjust enrichment, fraud in the inducement, violations of the NJ Consumer Fraud Act and NJ Racketeer Influenced and Corrupt Organizations Act ("RICO"), civil conspiracy, negligent misrepresentation, negligence, and that they are entitled to damages under the Spill Act and CERCLA.  The defendants in the *JSM* Action have not answered, and instead have moved to dismiss.  The instant Motion is pending in both the *Ford* and *JSM* Actions (collectively the "Current Litigations").

B.    The Instant Motion to Disqualify LeClair Ryan

In or about August 2006, WWM, owner of one of the Seven Properties, retained James Kosch, who at that time was a partner at the law firm of Reed Smith LLP ("Reed Smith")  (Docket Entry No. 504-2, Declaration of John W. Verlaque dated May 23, 2011 ("Verlaque Decl.") at 2). On August 22, 2006, Mr. Kosch sent Sidney Hofing and Leslie Goodman, 50% owners of WWM,

3

a retainer letter, in which Mr. Kosch generally discussed the services that he would render on behalf of WWM. (*See* Verlaque Decl. Ex. A, the "Retainer Letter"). At that time, Jack Morris, Edgewood's current principal, was the other 50% owner of WWM.

According to Mr. Verlaque, Edgewood's in-house counsel, WWM retained the services of Mr. Kosch in order to coordinate WWM's litigation efforts against Ford for Ford's alleged distribution of contaminated RCA. (Verlaque Decl. ¶ 9). Mr. Verlaque further declares that during Mr. Kosch's prior representation of WWM, Mr. Kosch prepared a draft agreement titled "Common Litigation Interest and Forbearance Agreement," (the "Common Litigation Interest Agreement"), which purportedly aligned WWM and Edgewood's litigation interests in connection with the contaminated RCA allegedly distributed by Ford to Edgewood and the Seven Properties. (*Id.* ¶ 10(c)).

Mr. Kosch and Ford dispute Mr. Verlaque's factual description of Mr. Kosch's prior representation of WWM. Mr. Kosch declares that his representation was minimal. (Docket Entry No. 509-1, Declaration of James A. Kosch dated June 6, 2011 (the "Kosch Decl.") ¶ 16). Mr. Kosch and Ford do not dispute that Mr. Kosch engaged in discussions with representatives of and counsel for both Ford and Edgewood, but state that his memory is limited. (*Id.*). Other than the WWM Site Plan, Mr. Kosch does not recall seeing any documents related to either of the Current Litigations. (*Id.* ¶ 11). Moreover, Mr. Kosch states that he never represented Edgewood. (*Id.* ¶ 14).

On or about October 2006, Messrs. Hofing and Goodman directed Mr. Kosch to cease work on the matter due to the pending sale of their interest in WWM to either Edgewood or Jack Morris. (Kosch Decl. ¶ 10). In January 2007, Mr. Morris and Sheryl Weingarten closed on their deal to buy out Messrs. Hofing and Goodman's ownership interest in WWM. (Docket Entry No. 504-3,

Declaration of Leslie Goodman dated May 23, 2011 (the "Goodman Decl.") ¶ 17).   On December 31, 2007, Mr. Kosch ceased working for Reed Smith and shortly thereafter became a partner at LeClair Ryan.

On March 14, 2011, LeClair Ryan entered its appearance on behalf of Ford in the *Ford* Action.   (Docket Entry No. 453).   On April 12, 2011, while attending a deposition in the *Ford* Action, Edgewood's in-house counsel, Mr. Verlaque, recognized Ford's attorney, Mr. Kosch.   On May 11, 2011, LeClair Ryan entered its appearance on behalf of Ford in the *JSM* action.   (Docket Entry No. 38).   On May 23, 2011, Edgewood and WWM filed the instant Motion, arguing that Mr. Kosch and his law firm are precluded from representing Ford in the Current Litigations because of impermissible "side-switching."

## III.  RELEVANT LAW

Edgewood and WWM argue that RPC 1.9(a) of the American Bar Association's Rules of Professional Conduct ("RPC") precludes Mr. Kosch from representing Ford, and Mr. Kosch's disqualification is imputed to LeClair Ryan under RPC 1.10(c).[4]   Local Civil Rule 103.1(a) provides that the RPCs, as revised by the New Jersey Supreme Court, govern the conduct of the members of the bar of this Court.   *See United States v. Balter*, 91 F.3d 427, 435 (3d Cir. 1996), *cert denied*, 519 U.S. 1011 (1996); *see also Wyeth v. Abbot Labs.*, 692 F. Supp. 2d 453, 456 (D.N.J. 2010).

---

[4]  During oral argument on July 20, 2011, counsel for Ford argued that the facts presented under the instant Motion are more aptly covered by RPC 1.9(b), as opposed to 1.9(a).  (Transcript of Proceedings dated July 20, 2011 at 32:7-22 ("Oral Arg. Tr.")).   The Court, however, declines to reach the issue of whether 1.9(b) applies, because it finds that 1.9(a) precludes Mr. Kosch from representing Ford.  The application of either RPC 1.9(a) or 1.9(b) on its own precludes representation under 1.9 *as a whole*.  *See H2O Plus, LLC v. Arch Pers. Care Prods., L.P.*, No. 10-3089, 2010 U.S. Dist. LEXIS 124055, at *14, 41 (D.N.J. Nov. 23, 2010) (disqualifying law firm under "1.9" where the three prongs of RPC 1.9(a) were met); *Thorner v. Sony Computer Entm't Am., Inc.*, No. 09-1894, 2009 U.S. Dist. LEXIS 108422, at *20-21 (D.N.J. Nov. 20, 2009) (same).

RPC 1.9(a) provides that: "a lawyer who has represented a client in a matter shall not thereafter represent another client in the same or substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing."[5]   Accordingly, 1.9(a) applies if the moving party meets its burden of showing the following: (1) the moving party is a former client of the adverse party's attorney; (2) there is a substantial relationship between the subject matter of the attorney's prior representation of the moving party and the issues in the present lawsuit; and (3) the interests of the attorney's current client are materially adverse to the moving party.  *21st Century Rail Corp. v. N.J. Transit Corp.*, 419 N.J. Super. 343, 355 (App. Div. 2011) (citing *City of Atlantic City v. Trupos*, 201 N.J. 447, 462 (2010)).

An attorney's conflict of interest under RPC 1.9(a) is imputed to the attorney's firm through RPC 1.10.  Specifically, under RPC 1.10(c), "[w]hen a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under RPC 1.9 unless: (1) the matter does not involve a proceeding in which the personally disqualified lawyer had primary responsibility."  As such, whether Mr. Kosch has a conflict of interest under 1.9(a) affects whether the conflict is imputed to LeClair Ryan.  *H20 Plus, LLC v. Arch Pers. Care Prods., L.P.*, No. 10-3089, 2010 U.S. Dist. LEXIS 124055, at *14 n.4 (D.N.J. Nov. 23, 2010); *Thorner v. Sony Computer Entm't Am., Inc.*, No. 09-1894, 2009 U.S. Dist. LEXIS 108422, at *21-22 (D.N.J. Nov. 20, 2009); *Lyon v. Goldstein*, No. 04-3458, 2006 U.S. Dist. LEXIS 71274, at *11 (D.N.J. Sept. 29, 2006).

---

[5] Neither WWM nor Edgewood consented to Mr. Kosch's representation of Ford.  Consent is not at issue in this case.

Once the Court finds a conflict under RPC 1.9 and imputes the conflict to an attorney's firm under RPC 1.10, the Court balances competing interests to determine whether the motion to disqualify should be granted.  Specifically, a motion to disqualify counsel requires courts to "balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." *Trupos*, 201 N.J. at 462.  But a client's "right to retain counsel of his or her choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement." *Id.*  The Third Circuit Court of Appeals has emphasized the importance of avoiding professional impropriety.  *See Akerly v. Red Barn Sys., Inc.*, 551 F.2d 539, 544 (3d Cir. 1977).  Therefore, it is only in "extraordinary case[s]" where a conflicted attorney or firm can avoid disqualification.  *H20 Plus*, 2010 U.S. Dist. LEXIS 124055, at *40.

## IV.  ANALYSIS

### A.   Application of RPC 1.9(a)

#### 1.   *Prong One: Former Clients and Attorney-Client Relationships*

The Court finds that WWM and Edgewood satisfy the first prong of 1.9(a).  To determine whether WWM and Edgewood were Mr. Kosch's "former clients" under 1.9, the Court looks to whether Mr. Kosch had an attorney-client relationship with each entity.  *See Thorner*, 2009 U.S. Dist. LEXIS 108422, at *18 (finding that moving party was a former client where "an attorney client relationship existed between [moving party] and [attorney]").  Here, Mr. Kosch's relationship with WWM satisfies prong one because he had a direct attorney-client relationship with WWM.  Mr. Kosch's relationship with Edgewood satisfies prong one because he had an implied attorney-client relationship with Edgewood based on his drafting of the Common Litigation Interest Agreement and

7

based on the sharing of confidences with Edgewood's counsel pursuant to that agreement.

Mr. Kosch's relationship with WWM clearly meets prong one of RPC 1.9(a). The record demonstrates that from August 2006 to October 2006, Mr. Kosch maintained an attorney-client relationship with WWM while Mr. Kosch was an attorney for Reed Smith. On August 22, 2006, Mr. Kosch executed the "Retainer Letter - WWM Site in West Windsor Matter," which stated, in relevant part:

> It was a pleasure to talk with you regarding *representation of WWM Properties, LLC ("WWM")* in connection with the clean up and recovery of damages for improper disposal of PCB's and other contaminants at the West Windsor property. This letter will outline the scope and work involved in our proposed representation and serve to confirm the *arrangement we discussed pursuant to which we will represent WWM*.
>
> This will confirm that *WWM has engaged Reed Smith* . . . .

(Retainer Letter) (emphasis added). Although Mr. Kosch asserts that his representation of WWM was at most "minimal," the language of the Retainer Letter suggests otherwise. The first paragraph of the agreement addresses the "representation of WWM," and the second paragraph "confirms that WWM has engaged Reed Smith," Mr. Kosch's previous firm. (*Id.*) It is therefore beyond doubt that Mr. Kosch's relationship with WWM satisfies prong one of the RPC 1.9(a).

Mr. Kosch's relationship with Edgewood also meets prong one of RPC 1.9(a) because Mr. Kosch drafted the Common Litigation Interest Agreement between WWM and Edgewood, which created an implied attorney-client relationship between Edgewood and Mr. Kosch, and because counsel for Edgewood shared confidences with Mr. Kosch pursuant to that agreement. Where counsel represents one entity that enters a joint participation agreement with another, an implied attorney-client relationship may exist. *In re Gabapentin Patent Litig.*, 407 F. Supp. 2d 607, 613-14

(D.N.J. 2005). To determine whether such a relationship exists, the Court examines the terms and performance of the agreement. *Id.* at 613-14.

In *Gabapentin*, the Court found that a co-defendant was an attorney's "former client" for purposes of disqualification under RPC 1.9 where a joint defense agreement required the parties to "maintain the privileged and confidential nature of the information," and where the attorneys established and executed a common defense strategy, collected documents from employees, analyzed legal issues in preparation for summary judgment motions, and participated in joint defense meetings and conference calls. 407 F. Supp. 2d at 609, 613-14. In *Gabapentin*, the court relied on *GTE North, Inc. v. Apache Products Co.*, 914 F. Supp. 1575 (N.D. Ill. 1996). In that case, an attorney and his law firm were disqualified under RPCs 1.9 and 1.10 because the parties entered into a confidentiality agreement for purposes of sharing information related to investigations in a CERCLA action, because the attorney was "privy to confidential information," and because investigation results were "disseminated . . . to each member's respective counsel [before counsel] . . . jointly discussed the investigation results, strategy, and legal merit of proceedings." *Id.* at 1580-81, n.6.

Similarly here, the Court finds that WWM and Edgewood entered into the Common Litigation Interest Agreement,[6] that Mr. Kosch was privy to confidential information, and that

---

[6] In relevant part, the agreement provides:

> WHEREAS, the Parties have agreed to forbear from and postpone asserting claims among each other and to resolve those claims amicably or by arbitration at a later date;

> WHEREAS, the Parties may share certain interests and may desire to assist and/or cooperate and share certain information, expenses, and work product as part of the common effort;

> WHEREAS, the Parties desire that confidential information, attorney-client privilege and attorney work product materials shall be accorded the maximum possible protection to which such information is entitled under law;

> WHEREAS, the Parties would benefit from participating in a joint effort to establish strategies, conduct

counsel for WWM and Edgewood shared confidential information for purposes of coordinating strategy and settlement discussions pursuant to their agreement.  Specifically, WWM and Edgewood agreed that "confidential information, attorney-client privilege and attorney work product materials shall be accorded the maximum possible protection to which such information is entitled under law," that "the parties would benefit from participating in a joint effort to establish strategies, conduct joint discovery and investigations, contain expenses, avoid duplicative work, and pursue the claims against Ford."  (Common Interest Litigation Agreement).  WWM and Edgewood also agreed that shared information would "be deemed privileged and confidential and subject to the common legal interest privilege, and will not be disclosed, shared or provided to anyone," and that "[t]he Parties shall (i) coordinate strategies and tactics with respect to asserting claims against Ford; (ii) coordinate and conduct discovery; [and] (iii) provide periodic status reports of assigned litigation tasks . . . ."

---

joint discovery and investigations, contain expenses, avoid duplicative work, and pursue the claims against Ford;

NOW, THEREFORE, in furtherance of the common effort and on behalf of themselves the Parties, specifically agree that:

1.  The information disclosed, shared or otherwise provided among the Parties to this Common Interest and Forbearance Agreement (the "Agreement"), whether written or oral, will be deemed privileged and confidential and subject to the common legal interest privilege, and will not be disclosed, shared or provided to anyone . . . .

2.  The Parties shall (i) coordinate strategies and tactics with respect to asserting claims against Ford; (ii) coordinate and conduct discovery; (iii) provide periodic status reports of assigned litigation tasks; . . . .

. . .

. . . 16.  Nothing in this agreement shall be construed to create an attorney-client relationship beyond the existing attorney-client relationships between each Party and its current counsel.  It is specifically acknowledged that WWM is represented by Reed Smith LLP and Edgewood and Jack Morris by Millberg Weiss LLP, which firms shall represent their respective Party in any dispute resolution proceedings hereunder.

(Verlaque Decl. Ex. B, the Common Interest Agreement).  The Court rejects Ford's arguments that the lack of signatures on the agreement limits its effect because, as discussed, the subsequent behavior of WWM and Edgewood comports with the document's contents.

10

(*Id.* ¶¶ 1-2).

Regarding the performance of the agreement and the exchange of information, Mr. Verlaque, in-house counsel for Edgewood, declares that he met with Mr. Kosch at Mr. Kosch's office on or about August 16, 2006 to discuss the "facts of the case against Ford," "how best to proceed," "Ford's illegal distribution of crushed concrete from the Edison Plant in 2005, the contaminants of concern, the then-known extent of the contamination at the WWM Site, potential remediation alternatives, and the scope and basis of WWM's damages." (Verlaque Decl. ¶¶ 5-7). Leslie E. Goodman, former member of WWM, also declares that he "attended a meeting at Mr. Kosch's office in Princeton, New Jersey on or about August 16, 2006, at which the facts of the case against Ford were explained," and that "Mr. Kosch not only drafted the [Common Interest Litigation] agreement, but also assisted in developing the strategy of jointly pursuing claims against Ford . . . in the early execution of the parties' joint efforts against Ford." (Goodman Decl. ¶¶ 6, 9). Additionally, Mr. Verlaque declares that he attended a settlement meeting in Newark, NJ on September 6, 2006 in which "Mr. Kosch spoke on behalf of WWM and the discussions with Ford and its counsel included the nature of the WWM Site, the status of Ford's remediation of the . . . contaminated concrete on the WWM Site, the damages WWM had suffered, and proposed settlement terms." (Verlaque Decl. ¶¶ 13-14). "Subsequent to the meeting . . . I [Mr. Verlaque] corresponded with Mr. Kosch and provided Mr. Kosch with projected damage calculations and alternate means of reaching a settlement with Ford on the WWM property. A settlement was never reached with Ford." (*Id.* at ¶ 15).[7]

---

[7] This Court notes that other courts that have addressed the issue generally have found that there is no presumption that confidences are exchanged during an implied attorney-client relationship based on a common interest agreement. *See, e.g., Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, No. 10-290, 2011 U.S. Dist. LEXIS 96162, 123-24 (D. Ariz. Aug. 26, 2011); *Gabapentin*, 407 F. Supp. 2d at 609, 612-13; *City of Kalamazoo v. Mich. Disposal Serv. Corp.*, 125 F. Supp. 2d 219, 240-42 (W.D. Mich. 2000); *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241, 253 (D.N.J. 1998). This Court agrees, and notes that its

Because of the express nature of the agreement's "common legal interest privilege" and because of the parties' subsequent sharing of confidential information in precisely the manner contemplated by the agreement (*e.g.*, "participating in a joint effort," "coordinat[ing] strategies and tactics," and co-developing ways to settle with Ford, Mr. Kosch's future client), the Court finds that an implied attorney-client relationship existed between Mr. Kosch and Edgewood, and that confidences were shared that Mr. Kosch could exploit against Edgewood and WWM.  Mr. Kosch drafted the agreement and worked hand-in-hand with Edgewood to establish a game-plan to resolve disputes with Ford in connection with Ford's alleged distribution of contaminated RCA at WWM's site.  (Common Litigation Interest Agreement ¶ 10(c)).[8]  Therefore, Mr. Kosch's relationship with Edgewood satisfies prong one of RPC 1.9(a).

2.    *Prong Two: Substantial Relationship*

Second, the Court finds that Mr. Kosch's current representation of Ford in the Current Litigations are the same as, or substantially related to, Mr. Kosch's prior representation of WWM. Under *Trupos*, matters are "substantially related" if "(1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client

---

decision in this case does not rest on such a presumption.  Instead, having reviewed the record in its entirety—including the parties' briefs, their accompanying declarations and certifications, the transcript from oral argument, and the Common Interest Litigation Agreement itself—the Court finds that confidences were exchanged between WWM, Edgewood, and Mr. Kosch pursuant to the agreement during Mr. Kosch's representation of WWM that are relevant to the present litigation and could be used on behalf of Ford against WWM and Edgewood.

[8]  Ford contends that paragraph sixteen of the Common Interest Litigation Agreement negates any common interest between WWM and Edgewood.  (*See* Verlaque Decl. Ex. A ¶ 10 ("Nothing in this agreement shall be construed to create an attorney-client relationship beyond the existing attorney-client relationships between each Party and its current counsel.")).  The Court rejects this argument based on the fact that paragraph sixteen is the final paragraph in the agreement and the fact that the "existing attorney-client relationships" include the "common legal interest privilege" established in paragraph one of the agreement.  (*Id.* ¶ 1).  To interpret paragraph sixteen as negating the same common interest privilege set forth in paragraph one would be to negate the entire document, whose very title is the "Common Litigation Interest and Forbearance Agreement."

in the subsequent representation of parties adverse to the former client, *or* (2) facts relevant to the prior representation are relevant and material to the subsequent representation. *Trupos*, 201 N.J. at 452 (emphasis added). Here, the Court finds that Edgewood and WWM have met the second prong of this test by showing that the facts underlying Mr. Kosch's prior representation of WWM are both relevant and material to his current representation of Ford in both the *JSM* and *Ford* Actions.

WWM, a Plaintiff in the *JSM* Action, has filed suit against Ford in connection with its distribution of contaminated RCA to the Seven Properties. Mr. Kosch's prior representation of WWM as outlined in the Retainer Letter, provides that his "representation of WWM [is] in connection with the clean up and recovery of damages for improper disposal of PCB/s and other contaminants [on behalf of WWM]." (Retainer Letter). Indeed, in the *JSM* Action, "WWM seeks to recover damages for environmental contamination caused by Ford, [and other entities] during 2005 to the West Windsor Property." (The *JSM* Action, Docket Entry No. 1 (the "*JSM* Complaint") ¶ 6). Moreover, although not executed, the Common Litigation Interest Agreement provides that WWM "has elected to retain separate counsel to pursue claims against Ford," and the Court is persuaded by the fact that WWM and Edgewood have in fact joined in an effort against Ford. In addition, Mr. Kosch admits that in September 2006, he participated in a settlement and status meeting with counsel for Edgewood and Ford at which Messrs. Hofing and Goodman desired to have all of the PCB contamination removed from the WWM site, as opposed to alternative clean-up methods. (Kosch Decl. ¶ 16).

The Court also finds that Mr. Kosch's prior representation of WWM involves facts that are the same or substantially related to those controlling the *Ford* Action. The underlying facts in the *Ford* Action–namely, facts related to the distribution of RCA from Ford's demolished Edison

Plant–are the same as those controlling the *JSM* Action.  The Court also affords weight to Mr. Goodman's assertion that Mr. Kosch was privy to an assortment of documents pertaining to the alleged distribution of contaminated RCA, and was working side-by-side with Edgewood's outside counsel at that time under the Common Litigation Interest Agreement.  (Goodman Decl. ¶¶ 8-13).  But more importantly, the circumstances surrounding Mr. Kosch's prior representation of WWM would have a tendency to prove facts that are at the heart of the *Ford* Action.  *21st Century Rail Corp.*, 419 N.J. Super. at 363.  Moreover, on September 28, 2010, this Court denied Edgewood's motion to amend to add WWM and the other owners of the Seven Properties to the *Ford* Action.  (*See* Docket Entry Nos. 359 and 361).  In short, WWM is an integral part of the *Ford* Action because a fact in dispute is whether and to what extent WWM received contaminated RCA.   Accordingly, the Court finds that Mr. Kosch's current representation of Ford in both the *JSM* Action and the *Ford* Action involves a matter that is the same as, or substantially related to, Mr. Kosch's prior representation of WWM.

### 3.     *Prong Three: Materially Adverse Interests*

Finally, the Court finds that the interests of Ford, Mr. Kosch's current client, are materially adverse to the interests of WWM, Mr. Kosch's former client, and to Edgewood, with whom WWM entered into a Common Litigation Interest Agreement, which was written by Mr. Kosch.  Under RPC 1.9(a), the test is whether the interests of the attorney's current client are materially adverse to those of the attorney's former client.  *Trupos*, 201 N.J. at 462.  Having already decided that both WWM and Edgewood satisfy prong one–former clients and attorney-client relationships–for purposes of RPC 1.9(a), the Court turns to the issue of material adversity.

In the *Ford* Action, Ford brought claims against Edgewood under CERCLA and the Spill Act

for contribution and indemnification for all costs as provided under the contract. Edgewood asserted counter-claims against Ford that include claims for breach of contract, contribution, negligent misrepresentation, and civil conspiracy. In the *JSM* action, WWM and others sued Ford for damages in connection with the receipt of contaminated RCA, alleging breach of contract, unjust enrichment, fraud in the inducement, violation of the NJ Consumer Fraud Act and NJ RICO, civil conspiracy, negligent misrepresentation, negligence, and damages under CERCLA and the Spill Act. Given the magnitude of potential damages, the number of claims, and the interrelated nature of actions, the Court finds that Ford's interests are materially adverse to the interests of WWM and Edgewood.

Ford argues that in 2006, when WWM retained Mr. Kosch, WWM and Edgewood themselves had a potentially adverse relationship, and therefore, Mr. Kosch's current representation of Ford fails the materially adverse prong of RPC 1.9(a). (*See* Oral Arg. Tr. 20:1-11, 21: 13-25). The Court rejects this argument for three reasons. First, at the time of Mr. Kosch's representation of WWM, WWM and Edgewood shared common interests directly adverse to those of Ford. Namely, WWM and Edgewood agreed to work together and share confidences, as well as to engage in a "joint effort to establish strategies, conduct joint discovery and investigations, contain expenses, avoid duplicative work, and pursue claims against Ford." (Common Interest Litigation Agreement). Notably, during Mr. Kosch's representation of WWM, the parties explicitly suspended any adversity between themselves. (*See id.* ("[T]he Parties have agreed to forbear from and postpone asserting claims among each other and to resolve those claims amicably or by arbitration at a later date.")).[9]

---

[9] In support of its argument that WWM and Edgewood were adverse parties, despite their agreement to the contrary, Ford focuses on paragraph sixteen of the Common Interest Litigation Agreement:

> Nothing in this agreement shall be construed to create an attorney-client relationship beyond the existing attorney-client relationships between each Party and its current counsel. It is specifically acknowledged that WWM is represented by Reed Smith LLP and Edgewood and Jack Morris by Millberg Weiss LLP, which

Second, because Edgewood has claimed damages in connection with WWM's receipt of purportedly contaminated RCA, a disposition of the *Ford* Action that is unfavorable to Edgewood has unfavorable consequences for WWM. Third, the Court is persuaded that Ford's interests are adverse to those of WWM and Edgewood because Mr. Morris and his wife, Ms. Weingarten, are currently the principal owners of both Edgewood and WWM, making it so that WWM's involvement in the *Ford* Action is inextricably intertwined with the action's financial impact on Edgewood. Thus, it is without doubt that Ford's interests are materially adverse to both moving parties.

      B.    <u>Imputation of Mr. Kosch's Conflict to LeClair Ryan</u>

      Under RPC 1.10(c), "no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under RPC 1.9 unless: (1) the matter does not involve a proceeding in which the personally disqualified lawyer had primary responsibility." Here, 1.9(a) applies. The Court also finds that LeClair Ryan "knowingly represented Ford" because "once counsel for Edgewood and WWM raised the issue of [Mr. Kosch's] supposed conflict," LeClair Ryan implemented screening measures. (Kosch Decl. ¶ 27). Therefore, 1.10(c) applies unless the "primary responsibility" exception applies, and the Court finds that it does not.

      It is undisputed that WWM retained the services of Mr. Kosch; neither side has presented the

---

firms shall represent their respective Party in any dispute resolution proceedings hereunder.

(Verlaque Decl. Ex. A ¶ 16). The Court reads this provision–the final provision of the agreement–in conjunction with the agreement's other provisions. Specifically, the Court reads paragraph sixteen in conjunction with paragraph five, under which, "[t]he Parties agree to postpone the resolution of all claims or cross-claims that each or any one of them might have against any other party, including but not limited to (i) claims which otherwise must be asserted as cross-claims for contribution or indemnity in any civil litigation contemplated by paragraph [four]," which states that "[n]othing in the Agreement shall be construed to waive any rights, claims, defenses or privileges which any Party shall have . . . ." (*Id.* ¶¶ 4, 5). The mere fact that parties officially entering into a "joint effort . . . against Ford" reserved claims among themselves *for a later date*, and retained separate counsel for that eventuality, hardly equates to the express creation of an adverse relationship in a document where the overall focus is a joint effort against a common opponent.

Court with any information that would tend to show that another attorney at Reed Smith counseled WWM. Moreover, the record demonstrates that Mr. Kosch performed substantial work on behalf of WWM, including but not limited to, drafting the Common Litigation Interest Agreement. The Court also finds that Mr. Kosch had primary responsibility in light of the fact that he participated in the September 2006 settlement discussions between Edgewood, WWM, and Ford.

Mr. Kosch's conflict under RPC 1.9, therefore, is imputed to LeClair Ryan. *H20 Plus*, 2010 U.S. Dist. LEXIS 124055, at *39 (disqualifying law firm under RPCs 1.9 and 1.10); *Thorner*, 2009 U.S. Dist. LEXIS 108422, at *22 (same).

C.    Disqualification of LeClair Ryan in the *Ford* and *JSM* Actions

Having found that RPC 1.10 imputes Mr. Kosch's conflict to LeClair Ryan, the Court determines whether the firm should be disqualified from the *Ford* and *JSM* actions by "balanc[ing] competing interests [and] weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." *Trupos*, 201 N.J. at 462. The Court notes that "there is no right to demand to be represented by an attorney disqualified because of an ethical requirement." *Id.*

After careful scrutiny of the facts, the Court finds that disqualifying LeClair Ryan is appropriate. Although Ford had a right to choose its counsel freely, this right did not extend to an attorney who had direct and implied attorney-client relationships with Ford's adversaries in the same matter. Mr. Kosch helped develop WWM's and Edgewood's common litigation strategy against Ford, and Edgewood's counsel had not realized Mr. Kosch was advising Ford until he saw Mr. Kosch at the April 12, 2011 deposition in which Mr. Kosch "stated on the record that he was there representing Ford." (Verlaque Decl.¶ 17).

Additionally, a conflicted attorney or firm can avoid disqualification only in "extraordinary case[s]." This, however, is not an extraordinary case. *H20 Plus*, 2010 U.S. Dist. LEXIS 124055, at *40. Indeed, although the litigation was filed in 2006, Mr. Kosch and LeClair Ryan only recently became involved in the Current Litigations. Specifically, the firm appeared as co-counsel in the *Ford* Action on March 14, 2011, and appeared as co-counsel in the *JSM* Action on behalf of Ford on May 11, 2011. The harm to WWM and Edgewood if LeClair Ryan is permitted to continue its representation of Ford outweighs any inconvenience to Ford resulting from its retention of new co-counsel. Accordingly, LeClair Ryan is barred from representing Ford in both the *JSM* and *Ford* Actions.

## V.  CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Edgewood and WWM's motion to disqualify LeClair Ryan from representing Ford in both the *Ford* and *JSM* Actions. An appropriate order shall accompany this opinion.

s/Esther Salas
**Esther Salas, U.S.D.J.**

18