UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

-------------------------------------------------------X
                                              :

FORD MOTOR COMPANY, ET AL.    :      Civil Action 06-1278 (ES-CLW)

      Plaintiffs/Counterclaim    :
      Defendants,

                                      :                 **OPINION**

    v.                                    :

                                       :       **November 18, 2011**

EDGEWOOD PROPERTIES, INC.     :

      Defendant/Counterclaimant. :
-------------------------------------------------------X

**WALDOR, United States Magistrate Judge,**

      Presently before this Court is MIG-Alberici, LLC's ("MA") motion, which Plaintiff Ford Motor Company and Ford Motor Land Development Corporation (collectively "Ford") joins, for evidentiary preclusion and sanctions pursuant to Fed. R. Civ. P. 37(b) filed on January 18, 2011. Brief for Plaintiff, Ford Motor Co. v. Edgewood Properties, Inc., No. 06-1278 (D.N.J. 2011), ECF No. 418 [hereinafter "Preclusion Motion"]. Defendant Edgewood Properties, Inc. ("Edgewood") filed its opposition to the Preclusion Motion on February 14, 2011. Brief for Defendant, Ford Motor Co. v. Edgewood Properties, Inc., No. 06-1278 (D.N.J. 2011), ECF No. 436 [hereinafter "Edgewood's Opposition"]. Further, MA filed it's reply to Edgewood's Opposition on February 22, 2011. Reply for Plaintiff, Ford Motor Co. v. Edgewood Properties, Inc., No. 06-1278 (D.N.J. 2011), ECF No. 442 [hereinafter "MA's Reply"]. Having considered the briefs, pursuant to Fed. R. Civ. P. 78, the motion is **DENIED.** *The Clerk of the Court is to terminate* **Docket Entry No. 418.**

I.      BACKGROUND

In a case with a complex procedural and factual history such as this, the Court will only address the narrow facts that are relevant to the decision at hand. As noted in previous opinions, this case arises out of the demolition of a Ford assembly plant in Edison, New Jersey, and the distribution of contaminated concrete therefrom. Op. and Order, Ford Motor Co. v. Edgewood Properties, Inc., No 06-1278 (D.N.J. 2011), ECF No 252 at 3. Ford and Edgewood entered into a contract whereby Ford agreed to provide 50,000 cubic yards of concrete to Edgewood in exchange for Edgewood hauling it off the site. Id. The concrete turned out to be contaminated, and so began this litigation, with Ford bringing the instant action against Edgewood asserting claims under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 et seq. and Section 58:10-23, 11f (a)(2) of the New Jersey Spill Act ("Spill Act" or "Act") for contribution and indemnification for all costs as provided under the contract. Id. Edgewood, in turn, counterclaimed against Ford, asserting breach of warranty, common law fraud, unjust enrichment, violation of the New Jersey Consumer Fraud Act, contractual indemnification and violations of the Spill Act. Id.

In April 2009, pursuant to Fed. R. Civ. P. 26(a) initial disclosure obligations, Edgewood produced a two-page chart with extensive footnotes titled "Summary of Edgewood Properties Damages (4-28-09)." Preclusion Motion at 1; Edgewood's Opposition at 1 [hereinafter "Edgewood's Damages Summary"]. According to Edgewood, the company received no assistance from an expert in the preparation of this summary. Edgewood's Opposition at 3. On May 8, 2009, Edgewood also produced 2,682 pages of supporting documents. Subsequently, in December of 2009, discovery was temporarily stayed in order to conduct depositions in an

attempt to mediate the case. On September 11, 2009, the deposition of Mr. Verlaque was taken wherein he explained that he was responsible for Edgewood's Damages Summary.

This Preclusion Motion arises from MA's dissatisfaction with Edgewood's Damages Summary.[1] Specifically MA alleges that Edgewood has failed to provide a sufficient evidentiary basis for Edgewood's Damages Summary. According to MA, there have been two Court Orders with which Edgewood has, willfully and in bad faith, failed to comply. MA's Reply at 2. In contrast, Edgewood asserts that it has produced the documents it is going to rely on in conjunction with expert witness testimony.

At a June 3, 2010 status conference, the Hon. U.S.D.J., Esther Salas entered the first Court Order and directed Edgewood's counsel as follows:

> "I am directing you on the record here today that you are going to provide a detailed outline of the damages in this case, 87 million that you are purporting are damages in this case; you are going to reference them by the Bates stamp ranges; and, if it is not done, counsel, then we're going to have issues with respect to motions and people are going to start-with my permission-serving me with motions and sanction motions against you all."

Fourth Am. Pretrial Scheduling Order, June 3, 2010, signed on July 7, 2010 by the Hon. U.S.D.J., Esther Salas, ECF No. 341.

Edgewood was given until June 18, 2010 to comply with this Order. In an attempt to do so, on June 18, 2010 Edgewood sent a letter to MA. MA, however, alleges that upon

---

[1] Ford joins MA in this Preclusion Motion. For ease of reference the Court will refer to both moving parties collectively as MA. All holding herein will apply to all parties for the purpose of this Preclusion Motion.

review the production was still deficient. In turn, on August 11, 2011, MA sent a letter to Edgewood outlining these deficiencies. Preclusion Motion at 6.

According to Edgewood, their counsel made every effort to comply with the June 3, 2011 Order. On September 17, 2010, at a case management conference before Judge Salas, MA highlighted the deficiencies in Edgewood's June 18, 2010 letter. Judge Salas reiterated the need for Edgewood to provide further information to MA, stating:

> "Go back and look at that transcript and what I ordered on June 3rd. And if I were you guys, if you don't want to start seeing things precluded, you're going to get them the damages documents that are outstanding, and if there are no documents you are going to say there are no documents, and you're going to tell them what they can expect to hear from these individuals that they're going to depose, in particular, Mr. Morris. I want that done by next Friday."

Tr. of Status Conference, 170:12-20, Sep. 17, 2010, ECF No. 359.

Pursuant to this order, Edgewood provided a response on September 24, 2010. Once again, MA found the additional information to be deficient and outlined this in its November 15, 2010 letter to Edgewood. Specifically, there are five areas of damages that MA takes issue with: actual construction costs, trucking costs, in-house labor rates, equipment rates and some elements of lost opportunity costs. Preclusion Motion at 9. In total, these costs comprise $16,884,000 of the approximately $87 million in damages that Edgewood estimates. Discussion of the Court Orders and Edgewood's compliance thereof follows below.

II.   **ANALYSIS**

    A.   **Legal Standard**

As an threshold matter, both parties agree that Edgewood fulfilled its initial discovery obligation pursuant to Fed. R. Civ. P. 26 ("Rule 26") ["Fed. R. Civ. P." hereinafter

"Rule"].  MA moves, under Rule 37(b), to preclude evidence based on Edgewood's alleged failure to comply with two Court Orders.  Therefore, the Court will focus its discussion on the issue of Rule 37(b) sanctions and not Rule 37(c) sanctions.[2]

> Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure states, in relevant part:
>
> "If a party or party's officer, director, or managing agent - or witness designated under Rule 30(b)(6) or 31(a)(4) - fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following: …. (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence…"

 Fed. R. Civ. P. 37(b)(2)(A).

There is ample precedent in this District where Courts have precluded a delinquent party from submitting withheld evidence that was not produced in response to a Court Order.  See, e.g., Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (plaintiff's failure to disclose its damages calculation until a week before trial in violation of the court's discovery orders warranted preclusion of any evidence of damages); In re Fine Paper Antitrust Litigation, 685 F.2d 810, 823 (3d Cir. 1982), cert. denied, 459 U.S. 1156 (1983) (preclusion would be an appropriate sanction for dilatory and incomplete compliance with a pretrial discovery order); Wachtel v. Health Net, Inc., 239 F.R.D. 81, 104-07 (D.N.J. 2006) (precluding the use of the information contained in documents produced for the first time by Defendants with their Motion for Summary Judgment and as designated trial exhibits);  Chalick v. Cooper Hospital/University

---

[2] Rule 37, among other things, permits the Court, under subsection (b), to preclude evidence where a party fails to comply with a Court Order. The Rule additionally permits preclusion under rule 37(c), where a party has failed to disclose and/or supplement its Rule 26 disclosures. Here, MA states in its reply papers that it moves to preclude only under Rule 37(b).

Medical Center, 192 F.R.D. 145, 152 (D.N.J. 2000) (holding that defendants were precluded from asserting the defense of notice for failure to respond to discovery requests).  All such preclusion holdings illustrated a parties flagrant disregard for a Court Order.

However, sanctions are not to be applied without limit.  Courts in this District, "recognize that the exclusion of evidence for failure to comply with a pretrial order is an 'extreme sanction' that is not normally imposed 'absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.'" Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir. 1977) (overturned for other reasons) (quoting Dudley v. South Jersey Metal, Inc., 555 F.2d 96, 99-100 (3d Cir. 1977) (internal citation omitted));  See also In re TMI Litigation, 193 F.3d 613, 721 (3d Cir. 1999).

The Third Circuit enumerated four factors to review when considering whether a failure to disclose or supplement warrants exclusion under Rule 37(c): "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure the prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of a case or other cases in court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." See Eli Lilly & Co. v. Actavis Elizabeth, LLC, No. 07-3770, 2010 WL 1849913 at *15 (D.N.J. May 7, 2010) (citing Nicholas v. Pa. State Univ., 227 F.3d 133, 148 (3d Cir. 2000)).

The enumerated Third Circuit factors are nearly identical to the factors Courts in this District considered when deciding whether to exclude evidence under Rule 37(b)(2).  See

Wachtel v. Health Net, Inc., 239 F.R.D. 81, 105 (D.N.J. 2006).[3]  Here, the Court must analyze the Eli Lilly/Meyers factors when determining whether Edgewood's alleged failure to entirely comply with Judge Salas' Order warrants preclusion under Rule 37(b).

### B. Discussion

#### (1) The Prejudice or Surprise to MA by Allowing Use of the Evidence

MA will not face prejudice or surprise by allowing Edgewood's use of the evidence.  Prejudice from an adversary's failure to file a timely or adequate discovery response may include the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party. Wachtel, 293 F.R.D. at 105 (citing Scarborough v. Eubanks, 747 F.2d 871, 876 (3d Cir. 1984).  For the reasons discussed below, this Court finds that MA is faced with limited prejudice or surprise.

MA has been on notice of the alleged damages Edgewood suffered since April of 2009.  From that time, Edgewood, at the Courts behest, has made several supplemental productions in support its damages claim.  Further, MA has deposed Mr Verlaque, the individual

---

[3] In deciding whether to impose sanctions against a party under Rule 37(c)(1), the court should consider: (1) prejudice or surprise to the other party; (2) the ability of violating party to cure the prejudice; (3) the likelihood of disruption; and (4) the violating parties' bad faith or unwillingness to comply.  See Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995).  The Wachtel Court held that the Rule 37 (b)(2) factors are nearly identical to the rule 37(c) factors.  In its ruling, the Court cited the Meyers case and highlighted the factors the Court should apply when preclusion is sought based on the violation of an Order.  Those Meyers factors are nearly identical to the factors Edgewood cites from the Eli Lilly case.  MA states that "there is no reason why the 4 factors (Eli Lilly factors) set forth on page 15 of Edgewood's brief need to be considered".  MA Reply at 14.  While MA is correct that the Eli Lilly matter dealt with the preclusion of evidence based on a violation of Rule 37(c) it is inaccurate in its assertion that there is no reason to consider the Eli Lilly factors.

responsible for Edgewood's Damages Analysis. Significant portions of time during that deposition have been spent reviewing the basis for Mr Verlaque's calculations. In fact, MA will continue to depose Mr. Verlaque in the near future. Moreover, MA has requested more than an additional three days to depose Mr. Verlaque in his 30(b)(6) capacity as well as individually.[4]

Furthermore, as noted in the motion for a protective order, Edgewood will be relying upon expert witnesses in establishing its damages claims. MA will have these experts available to them after the exchange of expert reports. Due to the ample future opportunity to depose both Mr. Verlaque and Edgewood's damages experts, this Court finds that none of the prejudicial factors referenced above are present. Specifically, Edgewood's delay in producing all documents relating to its damages claim will be not impose excessive burdens or costs on MA. MA has planned to address several other matters during Mr. Verlaque's deposition and can simply address any new issue arising from Edgewood's supplemental productions. Therefore, MA will not be prejudiced and/or surprised by the admission of this evidence.

### (2) The Ability of Edgewood to Cure the Prejudice

Any prejudice resulting from Edgewood's alleged delay in producing the evidence at issue can be cured. Courts in this District have held that prejudice and surprise are curable where a witness is made available for a deposition. See Eli Lilly and Co.,No. 07-3770, 2010 WL 1849913 at *9 (citing Merisant Co. v. McNeil Nutritionals, Inc., 242 F.R.D. 303, 308 (E.D.Pa.

---

[4] Edgewood has moved for a Protective Order over Mr Verlaque and its other witnesses in order to prevent excessive depositions. Brief for Defendant, Ford Motor Co. v. Edgewood Properties, Inc., No. 06-1278 (D.N.J. 2011), ECF No. 503 [hereinafter "Edgewood's Protective Order"]. Edgewood, however, has offered to provide the parties, including all who move here, with more than one day to depose Mr. Verlaque. While Edgewood's Motion for a Protective Order is currently pending before this Court, MA will have sufficient time to depose Mr. Verlaque in order to mitigate any prejudice and/or surprise.

2007) (denying, without prejudice, motion *in limine* to exclude witness who was not identified in disclosures or discovery with only one month prior to the trial date on condition witness would appear for prompt deposition).

In the instant case, the prejudice to the party has been cured or at least minimized to the extent that only a few million dollars of the damages are still allegedly unsupported. The remaining unsupported damages claims will be supplemented by expert testimony. MA will have ample time to address the basis for Edgewood's expert's findings. Additionally, as addressed more throughly above, MA has forthcoming additional depositions of Mr. Verlaque. In light of the above, the limited prejudice and/or surprise to MA is curable.

### (3) The Extent to Which Allowing the Evidence Would Disrupt The Orderly and Efficient Trial of This Matter or Another Before This Court.

Permitting use of the evidence at issue would not disrupt the orderly and efficent trial of this matter. As of January 3, 2011, MA has received the requested back up documents for the $13.7 million in dispute over the construction costs. Preclusion Motion at 9. There are many outstanding motions and issues that need to be resolved before this matter is ready for trial. It is unlikely that the remaining outstanding documents would disrupt the orderly and efficient trial of the case. As this is a complex litigation that has been ongoing since 2006, and the trial is not set to occur for some time, the resulting prejudice to MA is less than it would be to preclude millions of dollars of damages to Edgewood. Therefore, permitting use of Edgewood's later produced damages evidence would not disrupt the orderly and efficient trial of the present matter.

### (4) Edgewood's Bad Faith or Willfulness in Failing to Comply with a Court Order or Discovery Obligation

Edgewood's conduct does not amount to bad faith or willfully failing to comply with Judge Salas' Court Orders. MA's brief begins with its address to the Court at the June 3, 2010 status conference; specifically, with Ms. Donovan stating that the original damage summary did not include back up for almost $52 million of Edgewood's damages claims. The actual amount that MA is arguing to preclude, however, is less than $17 million. Preclusion Motion at 4. Accordingly, if MA is correct in its original statement, throughout the process of discovery since the June 3, 2010 status conference, Edgewood has provided support for at least an additional $34 million of its damages claims. This leads the Court to believe that despite hostility and frustration between the parties, some issues have been resolved through continued discovery.

Furthermore, the showing of bad faith by Edgewood is not convincing. There is evidence of Edgewood attempting to comply with all of the Court Orders directing the production of evidence in support of Edgewood's Damages Summary. The real dispute seems to lie not in the bad faith of either party, rather in a misunderstanding between the parties regarding the type of evidence that Edgewood intends to use to support it's Damages Summary. MA is entitled to seek production of the actual costs and damages. It is now in possession of supporting documents for at least $82 million dollars out of the alleged $87 million in damages. Thus, this Court finds that sanctions to preclude evidence of Edgewood's Damages Summary are unnecessary to furthering the goal of resolving this litigation on its merits.

The Court finds that the cases MA cites in support of preclusion are inapposite. While MA correctly states the legal standards and the availability of sanctions in those cases, the application of them to the one at hand is misplaced. For example, in Cvikich v. Altman Brothers, Inc., No Civ.A. 80-1361, 1981 WL 380667 (E.D.Pa. Jan. 15, 1981) at *1, defendants refused to produce documents on the ground of relevancy, despite the fact that the Court had ordered production of the documents. Here, MA has continually pointed out deficiencies in the Edgewood's Damages Summary production, however, there has been no outright refusal to produce evidence on the basis of relevancy.

Furthermore, the Court in Cvikich noted that the defendant outright ignored the first discovery request, as well as the subsequent motion filed by the plaintiff. Despite never filing any objections to the requests, the defendant failed to produce discovery after three motions for sanctions and a Court Order. Id. at, *2. In contrast, Edgewood has illustrated at least facial attempts to comply with the Court's Orders - sending letters on both of the dates by which the Court had required compliance. The dispute between MA and Edgewood therefore is an issue of substance rather than an outright failure to comply, which occurred in Cvikich and led to the Rule 37 sanctions.

In sum, as Edgewood correctly points out, the exclusion of evidence is "an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence.'" Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir. 1977 ) (overturned for other reasons) (quoting Dudley v. South Jersey Metal, Inc., 555 F.2d 96, 99-100 (3d Cir. 1977) (internal citation omitted)). No such showing has been made here.

### III. CONCLUSION

For the reasons stated above, MA's motions for sanctions and preclusion of evidence pursuant to Rule 37(b) is hereby DENIED. The Court declines to impose fees on either party based on the discussion above. An appropriate order shall accompany this opinion.

**SO ORDERED.**

*s/ Cathy L. Waldor*
**CATHY L. WALDOR**
**UNITED STATES MAGISTRATE JUDGE**